UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jamul Action Committee,<br><br>                Plaintiff,<br><br>    v.<br><br>Department of the Interior, Office of Indian Gaming, et al.,<br><br>                Defendants. | No. 2:22-cv-02148-KJM-JDP<br><br>ORDER |

For the reasons explained in this order, the Jamul Action Committee's complaint is **dismissed without leave to amend** for lack of subject matter jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**I.    BACKGROUND**

In some circumstances, Federal law permits high-stakes gambling on Indian lands. *See* 25 U.S.C. § 2710(d)(1)). The gambling must conform to a gaming compact between the Tribe and the surrounding State. *See Jamul Action Comm. v. Chaudhuri*, 837 F.3d 958, 961 (9th Cir. 2016). The Jamul Indian Village, a federally recognized Tribe, entered a gaming compact with the State of California about seven years ago. *See* Am. Compl. ¶ 24, ECF No. 22; Cal. Gambling

Control Comm., Ratified Tribal-State Compacts, No. 36, Jamul Indian Vill. of Cal.[1] After the State approved the compact, the Secretary of the Interior voiced no objections, so it was "deemed approved" under the relevant statute and regulations. Am. Compl. ¶ 25; *see also* U.S. Dep't Interior, Bureau of Indian Affairs, "Indian Gaming; Tribal-State Class II Gaming Compacts Taking Effect in the State of California," 81 Fed. Reg. 87585-01 (Dec. 5, 2016).

The Jamul Action Committee, the "JAC" for short, describes itself as "a non-profit organization of citizens living in and around the rural town of Jamul, California" whose "mission is to advocate for the preservation and improvement of the quality of life for all who live, work and recreate in Jamul." Am. Compl. ¶ 8 (quotation marks omitted). It has often challenged the Jamul Indian Village's status as a federally recognized Tribe, as well as its authority to build and operate a casino and oversee gambling in that casino. *See, e.g.*, *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 988–89 (9th Cir. 2020).

About a year ago, the JAC sent the Office of Indian Gaming a request under the Freedom of Information Act (FOIA) for a copy of a one-page appendix originally attached to the Jamul Indian Village's gaming compact. Am. Compl. ¶ 28. The appendix is a map of the Jamul Indian Village. *Id.* ¶ 24. The government responded with an email linking a copy of the compact, which was available on its website. Davis Decl. ¶ 4, ECF No. 25-2; *id.* Ex. 1 at 2–4, ECF No. 25-3. Or rather, the government attempted to respond by email—it inadvertently omitted the email address for the JAC's attorney from the list of recipients. *See* Ex. 1 at 1–2. Nor did the linked compact copy actually include the requested appendix; it too had been omitted inadvertently. Davis Decl. ¶ 5.

The JAC filed this lawsuit after it received no response to its FOIA request. It asserted a claim under FOIA and requested an order setting aside the Jamul Indian Village's compact. *See generally* Compl., ECF No. 1. After reviewing the complaint, the government realized it had not actually sent its email in response to the JAC's attorney, and it corrected that error by forwarding

---

[1] http://www.cgcc.ca.gov/?pageID=compacts (last visited August 28, 2023). The court takes judicial notice of this publicly available information posted on the State's website. *See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 968 n.4 (9th Cir. 2008) (taking judicial notice of compacts posted on the state's website).

its previous email. *See* Davis Decl. ¶ 5 & Ex. 1 at 1–2. Later the same day, the government also realized the appendix was not actually available at the link it had sent, so it sent a new link; this time the link directed the recipient to a copy of the compact that California had published, which included the missing appendix. *Id.* ¶ 5 & Ex. 1 at 1. The government also tracked down its own complete copy of the compact—appendix included—and it uploaded that complete copy to its own website. Hart Decl. ¶ 5, ECF No. 17-5. The government then moved to dismiss the JAC's complaint, among other reasons for mootness. ECF No. 17.

In response, the JAC amended its complaint as a matter of course as permitted by Rule 15(a)(1)(B). *See generally* Am. Compl. The amended complaint includes four claims. First, it seeks a copy of the formerly missing appendix under FOIA. *Id.* ¶¶ 34–48. Second, it requests a declaration that the Jamul Indian Village's gaming compact is inconsistent with federal law; it alleges the compact does not adequately describe the "reservation" and "Indian lands" in question. *Id.* ¶¶ 49–55. The JAC's third claim is very similar: it requests an order "declaring" directly "that the compact is inconsistent with" federal law because the notice of approval published in the Federal Register did not "include the 'limits' or 'boundaries' of any reservation." *Id.* ¶¶ 56–62. According to the JAC, this meant the Secretary of the Interior had an obligation not to approve the compact. *Id.* ¶ 61. Fourth, the JAC alleges the map in the appendix is "false and fraudulent," but does not elaborate. *Id.* ¶ 71. It asks the court to bar the government from relying on the map "to support any claim that it accurately depicts a 'reservation' eligible for gaming" under federal law. *Id.* ¶ 72.

The government again moves to dismiss. *See generally* Mot., ECF No. 25; Mem., ECF No. 25-1. The JAC opposes the motion, *see generally* Opp'n, ECF No. 27, which is now fully briefed, *see* Reply, ECF No. 28. The court heard oral arguments at a motion hearing and scheduling conference on August 11, 2023. Kenneth Williams appeared for the JAC, and Joseph Frueh appeared for the defendants who had appeared by the time of hearing; at the time, the JAC had not yet completed service on some defendants. After the hearing, the JAC confirmed it has now received a copy of the disputed map. ECF No. 32.

3

## II.  DISCUSSION

"For specific FOIA request claims, after the agency produces all non-exempt documents . . . the specific FOIA claim is moot because the injury has been remedied." *See Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016). The government has proven the JAC now has a copy of the map it requested, so the FOIA claim is moot, as counsel for the JAC acknowledged at hearing. The JAC's first claim is dismissed for lack of jurisdiction.

The government also contends the court lacks jurisdiction over the JAC's remaining claims. It argues the JAC has no standing to pursue them. When a standing dispute arises at the pleading stage, as in this case, a plaintiff can satisfy its jurisdictional obligations by "clearly" alleging facts demonstrating its standing. *Warth v. Seldin*, 422 U.S. 480, 518 (1975); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The court may also consider evidence outside the complaint when, as in this case, the defendants challenge the allegations underlying the plaintiff's claim to a federal court's jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

The JAC does not explain its theory of standing, but its allegations about its purposes imply it asserts claims on behalf of its members. *See, e.g.*, Am. Compl. ¶ 8; *see also, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.* (*TOC*)*, Inc.*, 528 U.S. 167, 180–81 (2000); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). An organization like the JAC can show it has standing to pursue claims on behalf of its members if those members "would otherwise have standing to sue in their own right," if "the interests at stake are germane to the organization's purpose," and if "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Laidlaw*, 528 U.S. at 181.

Starting with the first part of this test above, the JAC's members would have standing in their own right if they have "suffered an injury in fact . . . that is fairly traceable to the challenged conduct of the defendant, and [that injury] is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The JAC has submitted a declaration by its President, Glenn Revell. *See generally* Revell Decl., ECF No. 27-1. Revell

4

identifies a number of "impacts and damages" that he attributes to gambling under the Jamul Indian Village compact, such as increased traffic, pollution and crime. *Id.* ¶¶ 10–11. These are "concrete" harms, injuries "in fact," specific to individual people and allegedly attributable to the gambling the JAC challenges in this action. *See Spokeo*, 578 U.S. at 338. And if the court were to grant the JAC the declarations it seeks, the order would redress these harms by reducing or eliminating gambling operations, so the JAC's individual members would have standing to sue in their own right.

The JAC's allegations also satisfy the two remaining parts of the test for organizations who assert claims on behalf of their members. The interests at stake, i.e., the JAC's and its members' interests in reducing traffic, pollution, and crime, etc., are germane to its alleged purpose, i.e., advocating "for the preservation and improvement of the quality of life for all who live, work and recreate in Jamul." Am. Compl. ¶ 8. Finally, at this stage, the court cannot say the JAC's individual members' participation is essential.

The government disputes the JAC's claims about concrete harms, which it dismisses as the sort of "generalized grievances" federal courts do not entertain. *See* Mem. at 7. But as summarized above, Revell's declaration lists specific complaints about the effects of gambling near Jamul, and the Supreme Court has permitted plaintiffs to pursue claims based on similar complaints of harm. *See, e.g.*, *Laidlaw*, 528 U.S. at 183–84. The JAC has standing to pursue its second, third, and fourth claims on its members' behalf.

Whether those claims can move forward, however, is another matter. A complaint must be dismissed if it lacks a "plausible claim for relief" or if no "factual matter" supports its legal claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). And if a plaintiff alleges fraud, the complaint must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The JAC has not pointed to any federal law or rule requiring the government to publicly disclose maps on a website or elsewhere before approving gaming compacts. Its complaint rests on no plausible legal theory. The JAC does not support its assertions about the Jamul Indian Village's land with factual allegations. Nor do the JAC's allegations in the complaint lend support to its assertion that the once-missing map is "fraudulent" or otherwise deficient. *E.g.*,

Am. Compl. ¶ 71. Claims two, three, and four are dismissed for failure to state a claim under Rule 12(b)(6).

District courts ordinarily permit plaintiffs to amend their complaints when defects could likely be "cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted). But district courts may dispense with amendments that would amount to an exercise in futility. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir. 2008).

Additional factual allegations cannot remedy the basic fault in the JAC's first claim; it cannot assert a FOIA claim about the once-missing map, as it now has a copy. The first claim is dismissed without leave to amend. Nor can the JAC assert viable claims based on the theories underlying its second, third, and fourth claims. This court and the Ninth Circuit have held that the Jamul Indian Village was a necessary party in the JAC's previous actions, which like this one challenged the Jamul Indian Village's claims to land and its rights to operate a casino on that land. *See, e.g.*, *Jamul Action Comm. v. Chaudhuri*, 200 F. Supp. 3d 1042, 1049–51 (E.D. Cal. 2016), *aff'd sub nom. Jamul Action Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020). The Jamul Indian Village cannot be forced to join the government as a defendant, as it enjoys sovereign immunity. *See, e.g.*, *id.* at 1050–51. The JAC's second, third, and fourth claims all challenge the Jamul Indian Village's claims to land and control over land. *See, e.g.*, Am. Compl. ¶¶ 51–55, 60–62, 69–73. The JAC cannot pursue its claims without making the Jamul Indian Village a party in this action, and the Jamul Indian Village cannot be joined, so an amendment would be futile.

### III.   CONCLUSION

The motion to dismiss is **granted without leave to amend.** This order resolves ECF No. 25 and **closes the case.**

IT IS SO ORDERED.

DATED: August 28, 2023.

CHIEF UNITED STATES DISTRICT JUDGE